IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 09-54101 |
| **Akron Thermal, Limited Partnership and** ) | (Jointly Administered) |
| **Akron Thermal Cooling, LLC,** ) | |
| ) | |
| Debtors and ) | Chapter 11 |
| Debtors-in-Possession. ) | |
| ) | |
| ) | Chief Judge Marilyn Shea-Stonum |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |

## NOTICE OF APPEAL

Pursuant to Fed. R. Bankr. P. 8001 *et seq.* and 28 U.S.C. § 158, David Wehrle, in his capacity as trustee (the "Trustee") of the Creditors' Trust created pursuant to the Second Amended Plan of Reorganization for Akron Thermal, Limited Partnership Dated July 14, 2008, by and through his counsel, hereby appeals to the United States District Court for the Northern District of Ohio[1] from *Opinion and Order Denying Motion for Derivative Standing*, entered on March 12, 2010 at Docket No. 166, a copy of which is annexed hereto as Exhibit A.

The names of all parties to the order appealed from and the names, addresses, and telephone numbers of their respective attorneys are as follows:

---

[1] The Trustee has filed simultaneously with this Notice of Appeal a Statement of Election to have this appeal heard by the District Court in accordance with 28 U.S.C. § 158(c) and Rule 8001(e) of the Federal Rules of Bankruptcy Procedure.

| Party: | Counsel: |
|---|---|
| David Wehrle, Trustee | Joseph F. Hutchinson, Jr.<br>Kelly Burgan<br>Baker & Hostetler LLP<br>3200 National City Center<br>1900 East Ninth Street<br>Cleveland, OH  44114<br>Telephone:  216.621.0200<br>Facsimile:  216.696.0740<br>jhutchinson@bakerlaw.com<br>kburgan@bakerlaw.com |
| Akron Thermal, Limited Partnership | Daniel R. Swetnam<br>Tyson A. Crist<br>Schottenstein Zox & Dunn Co. LPA<br>250 West Street<br>Suite 700<br>Columbus, OH  43215<br>Telephone:  614.462.2225<br>Facsimile:  614.462.5135<br>dswetnam@szd.com<br>tcrist@szd.com |
| City of Akron | Richard G. Hardy<br>Todd A. Atkinson<br>Ulmer & Berne LLP<br>Skylight Office Tower<br>1660 West 2nd Street, Suite 1100<br>Cleveland, OH  44113-1448<br>Telephone:  216.583.7000<br>Facsimile:  216.583.7001<br>rhardy@ulmer.com<br>tatkinson@ulmer.com<br><br>-and-<br><br>Eric E. Skidmore<br>Brian K. Skidmore<br>One Cascade Plaza, 12th Floor<br>Akron, OH  44308<br>Telephone:  330.253.1550<br>Facsimile:  330.253.9657<br>ees@skidmorelaw.com |

| | |
|---|---|
| | bks@skidmorelaw.com |
| Thermal Ventures II, LP | John Winship Read<br>Vorys, Sater, Seymour & Pease LLP<br>1375 East Ninth Street<br>2100 One Cleveland Center<br>Cleveland, OH 44114<br>Telephone: 216.479.6103<br>Facsimile: 216.937.3737<br>jwread@vorys.com |

Dated: March 25, 2010
      Cleveland, Ohio

Respectfully submitted,

/s/ Joseph F. Hutchinson, Jr.
Joseph F. Hutchinson, Jr. (0018210)
Kelly S. Burgan (0073649)
Baker & Hostetler LLP
3200 National City Center
1900 East Ninth Street
Cleveland, Ohio 44114-3485
Telephone: (216) 621-0200
Facsimile: (216) 696-0740
Email: jhutchinson@bakerlaw.com
Email: kburgan@bakerlaw.com

*Counsel for the Trustee*

## CERTIFICATE OF SERVICE

A copy of the foregoing has been served via ECF or regular, U.S. Mail, on March 25, 2010, on the following:

    Todd A. Atkinson    tatkinson@ulmer.com
    Steven D Bell    steve@stevebell-law.com, maryann@stevebell-law.com
    Richard G Hardy    rhardy@ulmer.com
    Christopher J Niekamp    cjn@b-wlaw.com
    Michael Joseph Palumbo    michael@b-wlaw.com
    John Winship Read    jwread@vorys.com, hhroscoe@vory.com
    Donn D. Rosenblum  donn.rosenblum@ohioattorneygeneral.gov
    Brian K. Skidmore    bks@skidmorelaw.com
    Eric E Skidmore    ees@skidmorelaw.com
    Daniel R Swetnam    dswetnam@szd.com, nchambers@szd.com

    /s/ Joseph F. Hutchinson, Jr.
    Joseph F. Hutchinson, Jr.

**EXHIBIT A**

APPEALED ORDER

**IT IS SO ORDERED.**

Dated:  04:07 PM March 12 2010

MARILYN SHEA-STONUM
U.S. Bankruptcy Judge

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 09-54101 |
| Akron Thermal, Limited Partnership, and ) | (Jointly Administered) |
| Akron Thermal Cooling, LLC, ) | |
| ) | Chapter 11 |
| Debtors-in-Possession. ) | |
| ) | Judge Marilyn Shea-Stonum |
| ) | |
| ) | Opinion and Order Denying Motion for |
| ) | Derivative Standing |
| ) | |

This matter comes before the Court on motion of the Creditors' Trust[1] (the

"Trust") for an order authorizing David Wehrle, Trustee of the Creditors' Trust (the

"Trustee"), for derivative standing to pursue causes of action on behalf of the Akron

Thermal, Limited Partnership ("ATLP") bankruptcy estate (the "Motion"). This matter is

---
[1] The Creditors' Trust was formed pursuant to the Plan in the First Bankruptcy Case. Case No. 07-51884, Docket #472.

a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(C), (F), (G), and (O), over which this Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and the Standing Order of Reference entered in this District on July 16, 1984.

**I. Factual Background**

The following facts are undisputed:

1. Akron Thermal, Limited Partnership ("ATLP") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on June 18, 2007. Case No. 07-51884 (the "First Bankruptcy Case").

2. On January 26, 2009, this Court entered an Order (Case No. 07-51884, Docket #568) in the First Bankruptcy Case approving ATLP's Second Amended Plan of Reorganization (Case No. 07-51884, Docket #568) (the "Plan"). [2]

3. ATLP tendered to the City of Akron (the "City"), as a payment pursuant to § 7.2 of the Plan, a check in the amount of $2,541,103.09 (the "Payment") on February 20, 2009. The City deposited the check, which cleared on February 24, 2009. Docket #126, p. 5-6; Docket #145, ¶12.

4. Pursuant to the Plan, ATLP tendered to the Trust, which represents unsecured creditors in the First Bankruptcy Case, a promissory note in the amount of $2,060,000 and payable to the Trust (Docket #126, p. 6). As stated in the Plan, the promissory note is a "first priority lien upon all of Reorganized Debtor's [ATLP's] assets" (the "Promissory Note and Lien"). Case No. 07-51884, Docket #472, ¶5.8.

5. The City appealed confirmation of the Plan to the District Court for the Northern District of Ohio (the "District Court"). District Court Case No. 09-cv-601 (the

---

[2] Except where another case is specified, all docket citations are to this Second Bankruptcy Case.

"Appeal"). ATLP moved to dismiss the Appeal as equitably moot, arguing that the Plan was substantially consummated. District Court Case No. 09-cv-601, Docket #5 (the "Motion to Dismiss").

6. In its brief in opposition to the Motion to Dismiss, the City identified seven issues for the District Court to resolve on appeal, the first of which was whether this Court erred in determining that the Plan was feasible. This first issue had seven subparts. District Court Case No. 09-cv-601, Docket #12, Ex. A.

7. The City's brief in opposition also stated:

> The City did not place [the Payment] into its general funds but rather has set it aside in a separate, identifiable account. The City hereby agrees that if so requested or ordered, it will return this amount to the Debtor or this Court to be held in escrow until the Appeal process is concluded.

District Court Case No. 09-cv-601, Docket #12, § I.B.2.i. The City also submitted an affidavit stating that the Payment "was disbursed into a separate and segregated non-operating fund" and was "not being used for any purpose." District Court Case No. 09-cv-601, Docket #12, Ex. B.

8. The District Court entered an order on June 17, 2009, which granted the Motion to Dismiss in part and denied it in part. District Court Case No. 09-cv-601, Docket #14. The Motion to Dismiss was denied only with respect to two issues, namely, whether the Court erred by failing to find that the City "was entitled to indemnity under the lease [between the City and ATLP] and [whether] it erred when it refused to include certain charges in the cure amount required under § 365(b)(1)(A) of the Bankruptcy Code." District Court Case No. 09-cv-601,

Docket #14, p.9. The District Court's decision to deny the Motion to Dismiss as to these two issues was based on its finding that the appeal of these issues amounted to little more than a request for additional monies from ATLP. Case District Court No. 09-cv-601, Docket #14, p.9.

9. The Trust filed a Motion with the District Court[3] on September 1, 2009, in which it requested that the court order the City to turn over the Payment to be held in escrow until the conclusion of the appeal. District Court Case No. 09-cv-601, Docket #26 (the "Escrow Motion").

10. ATLP filed a second petition for relief under Chapter 11 of the Bankruptcy Code on September 11, 2009, commencing the case now before the Court (the "Second Bankruptcy Case"). The District Court entered an order staying the Appeal on September 16, 2009. District Court Case No. 09-cv-601, Docket #30.

11. The Trust filed claim #5 in the Second Bankruptcy Case, alleging a secured claim in the amount of $2,098,356.36 based on the Promissory Note and Lien.

12. The City moved for relief from stay in the Second Bankruptcy Case to allow the City to seek the voluntary dismissal of the Appeal. Docket #26. The Trust moved for relief from stay to pursue the Escrow Motion. Docket #32. This Court entered an order granting the City's motion and denying the Trust's, based partially on its finding that the City had accepted the Payment. Docket #84. The District Court upheld that order on appeal. District Court Case No. 5:09-cv-2930, Docket #20.

---

[3] Although the Trustee has argued otherwise, a review of the Appeal demonstrates that the Trust was not a party to the Appeal, but rather participated in accordance with 11 U.S.C. § 1109(b).

13. On December 4, 2009, the Trustee sent a letter to counsel for ATLP demanding that ATLP, as debtor-in-possession, pursue turnover and avoidance actions against the City to recover the Payment. Docket #126, Ex. A.

14. ATLP declined to pursue the actions, stating that although it "believes the claims … are colorable, since the primary beneficiary … of those claims would be the Trust and the Trust has indicated a willingness to do so, … we believe the Trust is the appropriate party to [pursue and] incur the cost of the action." Docket #126, Ex. B.

This matter is now before the Court on the Trustee's motion to pursue claims on behalf of the ATLP bankruptcy estate in the Second Bankruptcy Case (the "Second Estate") against the City, seeking turnover of the Payment.

## II. Applicable Law

The Sixth Circuit has stated that a creditor may be granted derivative standing to initiate an avoidance action if the following conditions are met:

1) a demand has been made upon the statutorily authorized party to take action;

2) the demand is declined;

3) a colorable claim that would benefit the estate if successful exists, based on a cost benefit analysis performed by the court; and

4) the inaction is an abuse of discretion ("unjustified") in light of the duties of the debtor-in-possession in a Chapter 11 case.

*Canadian Pacific Forest Prod. Ltd. v. J.D. Irving, Ltd. (In re Gibson Group)*, 66 F.3d 1436, 1446 (6th Cir. 1995) ("*Gibson Group*"). The Sixth Circuit has not specifically held that a creditor may have standing to pursue any claims other than avoidance actions.

However, the reasoning in *Gibson Group* was based on the prior holding that, as a general rule, "if a trustee in bankruptcy defaults in the performance of any duty, such as seeking to set aside a fraudulent transfer, the court may … permit a creditor to act in his name." *In re Automated Business Systems, Inc.*, 642 F.2d 200, 201 (6th Cir. 1981). Therefore, to the extent that failure to pursue claims against the City is a dereliction of ATLP's duty as debtor-in-possession, the Court may permit the Trust to pursue those claims. ATLP has a duty to protect the assets of the estate, including claims against third parties. *See, e.g.,* Collier on Bankruptcy ¶ 1106.02[2]. However, ATLP is not required to pursue lengthy and costly litigation based on the sliver of hope embedded in a series of obtuse and highly unlikely claims.[4]

**III. Analysis**

The primary question before the Court remains whether the Trust's claims are colorable as set forth in the complaint. *Gibson Group* at 1439. If the claims are colorable, the Court should also conduct a cost/benefit analysis to determine, based on relevant factors including the probability of legal success, whether the pursuit of the claims is likely to benefit the estate. *Id.* at 1446 (citing *In re STN Enter.*, 779 F.2d 901, 905 (2d Cir. 1985); *Official Comm. of Unsecured Creditors of Grand Eagle Cos. v. Asea Brown Boveri, Inc. (In re Grand Eagle Cos.)*, 310 B.R. 79, 95 (N.D. Ohio 2004). It is especially appropriate for the Court to consider the likelihood of success on the merits in this unusual instance, because the Court is well acquainted with many of the facts alleged in

---

[4] Although the Sixth Circuit has stated that a showing on the first three elements of *Gibson Group* is sufficient to create a rebuttable presumption favoring a motion for derivative standing (*Gibson Group* at 1446), it is not clear that a court is required, rather than permitted, to grant such a motion if it is opposed by a party other than the debtor-in-possession. Furthermore, regardless of whether *Gibson Group* does impose such a requirement, that aspect of the holding is plainly limited only to avoidance actions and may not be appropriate in the consideration of other types of motions for derivative standing. However, because the Court finds that the Trustee's claims are not colorable, it is not necessary to explore these issues in further detail.

the Trustee's draft complaint (the "Complaint"). In addition, most of those facts are matters of public record evident from an examination of the docket in this Court's own cases. Indeed, neither party has suggested any additional arguments or evidence, beyond what is now before the Court, would be presented if the proposed litigation was to go forward.

The Complaint states 10 claims against the City: (1) Turnover; (2) Bailment; (3) Replevin; (4) Conversion; (5) Unjust Enrichment; (6) Constructive Trust; (7) Avoidance of Preferential Transfer; (8) Recovery of Avoided Preferential Transfer; (9) Disallowance of Claims; and (10) Equitable Subordination. All of these claims are based on the Trust's assertion that the City did not accept the Payment. In turn, this was based on the City's assertion, during the course of the Appeal, that it was holding the Payment in a separate account so as to avoid the Appeal being deemed moot based on substantial consummation of the Plan. The Appeal of the Confirmation Order was determined to be moot on June 17, 2009. Notwithstanding these record facts, the Trust argues the Payment became property of the Second Estate. In the motion now before the Court, the Trust, as a creditor of the Second Estate, seeks derivative standing to pursue the claims in the Complaint. The Court will therefore begin with the central question of whether the Payment is aptly viewed as property of the Second Estate.

**A. Acceptance**

The Trustee cites a number of cases for the proposition that the creditor's intent is central to the question of whether or not acceptance has occurred. As stated in a prior opinion and in hearings addressing these issues, the Court believes that the Uniform Commercial Code as adopted in Ohio is the starting point for any determinations

regarding payment and acceptance. Ohio law provides that, "[u]nless otherwise agreed,
… [p]ayment or certification of [an uncertified check] results in discharge of the
obligation to the extent of the amount of the check."[5]

There is no dispute that the check was paid by the drawee bank to the City of
Akron. The Trustee has not asserted that this point in time – when funds discharging a
debt are received by the creditor – is not the proper point to fix the event of acceptance,
but only that that point was not the time when the check was paid. The Court was
unpersuaded by that argument in the context of the relief from stay motion. The Court is
still persuaded that Ohio law on this point is that "negotiating a check and retaining the
proceeds constitutes acceptance of the check." Docket #84, *citing Mon-Rite Constr. Co.
v. Northeast Ohio Regional Sewer Dist.*, 485 N.E.2d 799, 803 (Ohio App. 1984) ("*Mon-Rite*").[6]

The Trustee cites the case of *Ruckman v. Ohio Nat'l Life Ins.*, 1981 WL 5289
(Ohio App. 1981) for the proposition that negotiation of a check is not acceptance. In that
case, the court held that "at some point, the receiving, holding, and disposing of a check

---

[5] The Trustee quotes the same statute, "Unless otherwise agreed and except as provided in division (A) of this section, if a note or an uncertified check is taken for an obligation, the obligation is suspended to the same extent the obligation would be discharged if an amount of money equal to the amount of the instrument were taken…," for the proposition that "payment via check is treated … on par with cash" and that the old Ohio case law pre-dating Ohio's adoption of the Uniform Commercial Code applies to the analysis of how cash would be treated. The language quoted from the Ohio Revised Code addresses a check that has been tendered but not paid by the drawee bank. Ohio law clearly states that once the check is paid, the underlying obligation is discharged. The Court concludes that the pre-UCC Ohio case law is not controlling when the UCC provides for a different result.

[6] The Trustee argues that *Mon-Rite* is based on an incorrect interpretation of *Hudson v. Yonkers Fruit Co.*, 179 N.E. 373 (N.Y. 1932). However, contrary to the Trustee's assertions, *Mon-Rite* does not quote a section of *Hudson* relating to accord and satisfaction. Justice Cardozo's opinion specifically categorized the type of payment referenced as a condition lawfully imposed, as opposed to accord and satisfaction. In this case, the Plan clearly stated that the check was tendered in satisfaction of ATLP's debts to the City, thereby creating a lawfully imposed condition. There can be no doubt that the Plan clearly did not allow the City to retain the proceeds of the check without treating the debt as discharged. As Justice Cardozo stated, "The use of the check in violation of the condition would be an act of conversion. What is said or written by the creditor may be a refusal to assent. The law imputes to him an assent on the basis of his acts." 179 N.E. at 375. Here, assent is imputed by the City's negotiation and acceptance of the check, except to the extent that it appealed the Plan that put the condition on the acceptance.

will be an acceptance of it. However, the actual cashing of the check, without more, does not turn a conditional acceptance of the payment of the overdue [life insurance] premiums into an unconditional acceptance." *Id.* at *2. *Ruckman* is, however, factually distinct from this case in a number of ways. In *Ruckman*, the insurance company notified the insured immediately on receipt of the check that the policy had lapsed. The insured's offer of the check is therefore more appropriately characterized as an offer (to renew the policy) rather than mere payment. *Ruckman* does not speak to creditor-debtor relationships, let alone the distribution received by a claim holder pursuant to a confirmed Chapter 11 case. The insurance company's response requested certain forms from the insured and was therefore a counteroffer. When the necessary forms for renewing the policy were not returned, the company treated the counteroffer as rejected and returned the amount of the check to the insured, less than 3 weeks after it had been received. *Ruckman* does not provide a basis for ignoring the clear rules set forth by the Ohio Revised Code and the Uniform Commercial Code, discussed above.

### B. Equitable Estoppel

The Trustee asserts that the City will be equitably estopped from asserting that it accepted the payment by depositing ATLP's check. The Sixth Circuit has held that equitable estoppel is appropriate where the party asserting it shows:

1. Conduct or language amounting to a representation of material fact;
2. Awareness of true facts by the party to be estopped;
3. An intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended;

4. Unawareness of the true facts by the party asserting the estoppel; and
5. Detrimental and justifiable reliance by the party asserting estoppel on the representation.

*Parsley v. City of Columbus*, 471 F. Supp. 2d 858, 868 (6th Cir. 2006). Here, there may be a colorable argument that the City changed its position on the question of *law*, which is whether it had accepted the funds. However, this is not a question of *material fact*. The City's representation of facts throughout these cases has been consistent. The funds were held in a separate, identifiable account controlled by the City. The City's intent to use or not use those funds before or after the conclusion of the appeal is not a question of present material fact, but future intent. Additionally, the Trustee has not marshaled any facts or arguments to support a finding in his favor on elements (3), (4), or (5).

Finally, "a party invoking equitable estoppel against a governmental entity must demonstrate "affirmative misconduct" by the government in addition to the other elements." *Id*. The Trustee has made no such showing. The Court therefore finds that the Trustee's equitable estoppel argument is without merit.

### III. Conclusion

Returning to the Complaint, the Trustee's claims are plainly based on the assertion that the City did not accept the check by depositing it and the Payment therefore remained property of ATLP until it became property of the Second Estate. Because the underlying proposition that the City did not accept the Payment is not colorable, the Trustee has failed to meet the conditions set forth in *Gibson Group* and the Motion for derivative standing is not well-taken. The Motion is therefore denied.

# # #